## STIMSON LUMBER CO. *v.* COMMISSION

Carrell F. Bradley, Hillsboro, Oregon, represented the plaintiff.

G. F. Bartz, Assistant Attorney General, Salem, Oregon, represented defendant.

Decision for plaintiff rendered May 16, 1968.

EDWARD H. HOWELL, Judge.

The sole issue involved in this appeal is the valuation of certain old-growth Douglas fir timber owned by the plaintiff in Tillamook County. The land value and volume of the timber are not in dispute.

The plaintiff's timber, known as the Green Island timber because it was spared during the fire, lies in the Tillamook Burn area and covers seven sections of land. The tax years involved are 1966-67 and 1967-68.

To arrive at the valuation of timber the tax commission classifies it into "A"; "B"; and "C" classes based on the percentage of peeler logs included in the stand of timber. Only "A" and "B" classes are involved here. Class "A" is stands of timber having 40 percent or more net volume of peeler grade logs, and class "B" timber is stands which range from 16 percent to 39 percent peeler grade logs. The tax com-

mission found that Sections 28, 29 and 31 of the plaintiff's seven sections were "A" timber, Sections 32 and 33 were a combination of "A" and "B" timber, and Sections 27 and 30 were "B" timber. The parties have also agreed upon the values for "A" and "B" timber and the only dispute concerns the classifications. The plaintiff contends that all seven sections of timber should be classed as "B" timber because they will not produce in excess of 39 percent peeler logs.

The plaintiff relies upon a cruise made in January and February, 1968 of Sections 28, 29 and 31 which had been classified "A" timber by the tax commission. Plaintiff's cruisers used the strip method of cruising and found that the net merchantable volume in each of the three sections would produce less than 39 percent peelers with an average of 33.4 percent peelers for the three sections. The cruiser also testified that in his opinion the same result would follow for Sections 32 and 33 classified by the commission as a combination of "A" and "B" timber.

The defendant's cruise of the subject timber was made in 1958 using the prism method of cruising. The cruise was made by dividing each section into quarter sections of 160 acres, cruising each quarter-section, grading each tree in the particular cruise plot and then determining the amount of net merchantable volume and the classification based on this percentage. A check cruise was made by the commission in February, 1968, but no results were offered in evidence at the trial. Defendant's cruise found all four quarter sections in Sections 28, 29 and 31 to be in the "A" classification, and in Sections 32 and 33 there were some "A" and some "B" quarter-sections.

Both parties admitted that each type of cruise is an acceptable method of cruising.

The plaintiff's evidence indicated that Sections 28, 29 and 31 were "B" sections. The defendant believed that when these sections were cruised by the quarter-section method they produced an "A" classification and consequently each section as a whole is also an "A" classification. The defendant found that the average of all the "A" classification quarter-sections would result in 42 percent peeler logs and an average of the "B" classification quarter sections would result in 30 to 35 percent peeler logs. The average of both "A" and "B" classifications would result in an overall average of 38 percent which would result in a "B" classification if the timber was considered as one stand as the plaintiff contends it should be.

The plaintiff also relied on the cutting record of timber from all seven sections over the past several years to show that the logs have been falling into the "B" classification. The grading records for the logs cut showed a percentage of 33.7 percent for 1965-66, 32 percent for 1966-67, and 38.4 percent for 1967 to date. There was also testimony that no lot or section had ever produced 40 percent or better peelers and that these cutting records are representative of all the timber on all seven sections.

The tax commission contended that plaintiff's cutting record was not material because it was possible for plaintiff to cut their logs to produce a higher grade. This may be true but it would also result in substantially more cost to plaintiff and in some instances would be physically and economically impracticable.

■ The plaintiff has sustained its burden of proof. The plaintiff's cruise was recently accomplished by a competent cruiser following tax commission rules of procedure and using an acceptable method of cruising.

The result is supported by plaintiff's cutting records over several years. The timber should be classified as "B" timber. The order of the commission is set aside and a decree will be entered in favor of plaintiff.