## STIMSON LUMBER CO. *v.* COMMISSION

Carrell F. Bradley, Hillsboro, Oregon, represented the plaintiff.

G. F. Bartz, Assistant Attorney General, represented the defendant.

Decision for plaintiff rendered January 31, 1969.

EDWARD H. HOWELL, Judge.

This case is a sequel to the decision of this court in *Stimson Lbr. Co. v. Commission,* 3 OTR 217 (1968). In that case the only issue before the court was the classification and resulting value of certain Douglas fir timber owned by Stimson in Tillamook County. The tax years involved were 1966-67 and 1967-68. The tax commission contended that the timber should have an "A" classification which would have resulted in a value of $16.50 per thousand, and the plaintiff contended that the timber should have a "B" classification and a value of $14.50 per thousand. This court found for the plaintiff and a decree in the plaintiff's favor was entered on June 5, 1968. The tax commission did not appeal.

The hearings before the commission on the original Stimson case were held on September 20, 1966, and again on November 1, 1967. The commission handed down its opinion and order on December 28, 1967. In 1966, while plaintiff's case was pending before the commission, the plaintiff cut some of the timber involved and reported the cut to the assessor who computed the additional tax due under ORS 321.645, using the value for an "A" classification. The plaintiff paid this tax in May, 1967, and now seeks recovery for the overpayment resulting from this court's reclassification of the timber. In 1967, also while the plaintiff's case was still pending before the commission, the plaintiff cut more timber from the same land, reported the cut in 1968, and again the assessor com-

puted the additional tax on the basis of the timber having an "A" classification. The plaintiff did not pay this tax and requests that the additional assessment be cancelled.

After the plaintiff's successful appeal to this court in the original case and the reduction in classification of the timber the county assessor refused to grant plaintiff a refund for the taxes paid on the timber cut in 1966 and refused to cancel the additional assessment for the taxes on the timber cut in 1967. The present issue is before the court on a petition by plaintiff for an alternative writ of mandamus to require the assessor to grant the refund for 1966 and cancel the assessment for 1967.

The defendant contends that the plaintiff is not entitled to prevail because in addition to appealing the valuation of the timber for 1966 and 1967, as it did in the original case, it also should have appealed the additional tax imposed by ORS 321.645 after harvest of the timber. The plaintiff contends that the original appeal to this court was sufficient and that it was not required to appeal from the original valuation and again from the additional taxes imposed under ORS 321.645 after a portion of the timber was harvested. This is the issue raised by the briefs and the one that will be decided herein.

Whether plaintiff should have prosecuted two appeals requires an analysis of the Western Oregon ad valorem timber tax statutes and the appeal procedures as they apply to the taxation of such timber.

ORS 321.605 to ORS 321.680 all relate to Western Oregon ad valorem timber taxation. ORS 321.610 states that the purpose of these statutes is to establish an equitable method of taxing timber, to encour-

age the orderly harvesting of old growth timber by avoiding excessive annual taxation and to encourage sustained yield forestry. The tax commission is required by ORS 321.622 to appraise taxable timber and determine the "immediate harvest values" of the timber, which is defined by ORS 321.605(6) as the amount the timber would sell for at a voluntary sale made in the ordinary course of business for the purpose of immediate harvest. After the commission has appraised the timber and determined the immediate harvest value it is required to make this information available to the various county assessors for tax purposes. ORS 321.622(2).

Under ORS 321.617 the true cash value of the timber is computed at either 30 percent or 25 percent of the immediate harvest value, depending on the factors mentioned in that statute.

As long as the trees are not harvested the owner is required to pay an ad valorem tax based on 25 or 30 percent of the immediate harvest value. Once the trees are harvested the remaining 70 or 75 percent, as the case may be, is assessed against the owner in the year following the harvest. ORS 321.645. Before March 3 of the year following the harvest the owner is required to file with the assessor a report which includes a legal description of the property from which the timber was cut, an estimate of the acres logged and a percentage of the total volume of timber harvested from such acreage. ORS 321.955. In addition, the owner may also report the *timber harvested* by board foot volume or other unit measurement. ORS 321.650. After March 3 the assessor must notify the owner in writing of the amount of additional tax and the owner is allowed thirty days thereafter in which to file written objections with the tax commission. ORS 321.655.

Appeals may be taken from the commission's ruling to the Tax Court. ORS 321.660.

While the statutes mentioned above provide for the appeal procedure to be followed if the timber owner objects to the additional tax based on the amount of timber harvested, the same statutes are silent regarding the appeal procedure to be followed if the owner objects to the original valuation (immediate harvest value) placed on the timber. The plaintiff followed the general procedure for appeals in ad valorem cases by first appealing to the board of equalization under ORS 309.100, to the tax commission under ORS 306.515 and to the Tax Court under ORS 306.545.

■■ It is clear from a reading of the statutes that the amount of the harvested timber is the basis for the additional tax computed and imposed under ORS 321.645, 321.650 and 321.655. See also *Moore Mill & Lbr. v. Commission,* 2 OTR 102 (1965).[1] However, it is also clear that the additional tax after harvest refers back to and is based upon the original valuation placed upon the timber in the year preceding the harvest. The overall theory of these statutes is that the timber owner should pay 25 or 30 percent of the immediate harvest value if the timber is not harvested,

---

[1] In *Moore Mill* the parties agreed that the tax commission had made an erroneous cruise of plaintiff's timber. The assessor used the erroneous cruise to determine the value of the timber as of January 1, 1962. The plaintiff did not appeal the assessor's valuation. Later when a portion of the timber was harvested the assessor computed the additional tax on the basis that the owner had harvested 18 million board feet in 1962 when in fact he had harvested only 14 million feet. Plaintiff appealed the additional tax imposed using the appeal procedure outlined in ORS 321.655 and 321.660. The commission denied relief on the grounds that the plaintiff should have followed the general ad valorem appeal procedures for contesting the original valuation. As the additional tax was based on an incorrect *volume* of timber harvested this court held that plaintiff's appeal under ORS 321.655 and ORS 321.660 was proper.

and the balance of 70 or 75 percent is payable after the timber is harvested, for a total of 100 percent.

■ The tax commission in this case would have the plaintiff appeal not only the original valuation, as it did in the prior case, but also prosecute another appeal from the additional tax imposed after the harvest. Obviously this was not the intention of the legislature because it is clear from the statutes that the additional tax is based on the volume or amount of the timber harvested. The original value has been established and the owner is entitled to appeal if dissatisfied with that value. There would be no logical reason why there should be a separate redetermination of value for the same January 1 date for timber standing and later for the timber when harvested. In fact, this was the position of the defendant in the *Moore Mill* case, *supra*.[②]

■■ If the timber owner is dissatisfied with the original valuation of the timber (immediate harvest value) he should follow the general appeal procedure in ad valorem cases by appealing to the board of equalization, to the tax commission and to this court under ORS 309.100, 306.515 and 306.545. If the owner is dissatisfied with the amount of additional tax imposed after harvest which is based on the volume cut he should follow the appeal procedure outlined in ORS 321.655 and 321.660.

The prior *Stimson* case established the classifica-

___

[②] In the defendant's brief filed in this court in *Moore Mill* the defendant stated:

"* * * The Commission up until this date at least has operated under the theory that the legislature intended that the value actually established as of the preceding January 1 was intended to be the valuation used for determining all ad valorem taxation including the additional tax added on with respect to timber harvested during that calendar year."

tion and value of the timber involved. The additional tax paid for 1966 and the assessment of the additional tax for 1967 were based on a classification and valuation which this court found to be incorrect. If the commission was dissatisfied with this conclusion it should have appealed.

The reduction in value made by this court applies to the timber cut in 1966 and 1967 and the additional tax imposed thereon should be computed on the basis of class "B" timber at $14.50 per thousand board feet. The plaintiff is entitled to a refund for that portion of the additional taxes paid in 1966 which was based on the erroneous classification and valuation of the timber, and the additional taxes assessed in 1967 also should be abated accordingly. The plaintiff is entitled to a writ of mandamus in accordance with its petition.